**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| Rachel Brannen, Jason LaRoche,<br>Matthew LaRoche, Parker LaRoche,<br>Sean LaRoche and Andrew Worsham<br><br>               Plaintiffs,<br>v.<br><br>City of Jesup, Georgia, and Mike Lane,<br>Ray Boyles, Patricia Brantley, Nick Ellis,<br>Justin Evors, Scott Hardenbrook,<br>Jonathan McCullough, Phillip Sumrow,<br>James Tankersley, and Steven Wright,<br>individually,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No.: 2:22-cv-65 |

## COMPLAINT

COME NOW, Plaintiffs Rachel Brannen ("Brannen"), Jason LaRoche ("Jason"), Matthew LaRoche ("Matthew"), Parker LaRoche ("Parker"), Sean LaRoche ("Sean"), and Andrew Worsham ("Worsham"), by and through their attorney, E. Michael Ruberti, Esq. and complaining against Defendants, allege as follows:

### JURISDICTION AND VENUE

1. This action arises under (i) the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States; (ii) 42 U.S.C. §§ 1983 and 1988 of the laws of the United States; and (iii) O.C.G.A. §§ 51-1-13 and 51-1-14, and O.C.G.A. § 51-7-20 of the laws of Georgia.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because it is where some

1

or all of the defendants reside and where the events complained of occurred.

## PARTIES

5.  Plaintiffs are now and were, at all times material herein, residents of the City of Jesup, Georgia ("City").

6.  With the exception of the City, Defendants were, at all times material herein, law enforcement officers employed by the City.

7. Defendant Mike Lane ("Lane") was at all times material herein employed by the City as its Chief of Police.

8. Defendants Ray Boyles ("Boyles"), Patricia Brantley ("Brantley"), Nick Ellis ("Ellis"), Justin Evors, ("Evors"), Scott Hardenbrook ("Hardenbrook"), Jonathan McCullough ("McCullough"), Phillip Sumrow ("Sumrow"), James Tankersley ("Tankersley"), and Steven Wright ("Wright") were at all times material herein employed by the City as police officers.

## FACTUAL ALLEGATIONS

### Plaintiffs' Residence

9.  At all times material herein, with the exception of Plaintiff Worsham, who was and remains a resident of Wayne County, Georgia, Plaintiffs were residents of 786 South Sixth Street in the City of Jesup, Wayne County, Georgia. (The "residence").

10. "The residence," as used herein, includes the trailer in which Sean lived that was parked at the residence.

### Defendants' Unlawful Actions On August 7 or 8, 2020

11.  On August 7 or 8, 2020, late afternoon, Plaintiffs' were at the residence, at which time and place, Defendants burst into the residence.

12. Most or all Defendants were dressed in law enforcement gear.

2

13.  Defendants burst into the residence brandishing drawn weapons that they trained on Plaintiffs, screamed obscenities at Plaintiffs, and threatened Plaintiffs' lives. ("Defendants' explosive entry").

14.  Plaintiffs were startled and terrified by Defendant's explosive entry.

15. Subsequent to their explosive entry, Defendants continued, for a period of time (i) to train their weapons on Plaintiffs; (ii) threaten Plaintiffs' lives; and (iii) scream obscenities at Plaintiffs.

16. Subsequent to their explosive entry, Defendants shouted to Plaintiffs to kneel, and commenced to handcuff them and detain them at gunpoint.

17.  Plaintiffs' terror intensified.

18. Plaintiffs complied with Defendants' threatening orders.

<u>The SWAT Team's Ransacking Of Plaintiffs' Residence</u>

19.  Defendants' ransacked the residence, including every room therein, for several hours.

20. Upon their departure, Defendants left the residence in shambles.

21.  Several times during the period of time Defendants remained in the residence, one or more Plaintiffs asked to be shown a warrant, and to be provided with a copy of any such warrant, but the Defendants ignored Plaintiffs' requests.

22.  Several times during the period of time that Defendants remained in the residence, one or more Plaintiffs asked Defendants what they were searching for, but Defendants ignored Plaintiffs' questions.

23.  Defendants did not have an arrest warrant, a search warrant, or any court order authorizing their conduct.

24. The duration of Defendants' unlawful (i) entrance into Plaintiffs' residence; (ii)

explosive entry; (iii) terrorizing of Plaintiffs; (iv) search of the residence; (v) seizure of

Plaintiffs; (vi) search of Plaintiffs' persons; (vii) seizure of Plaintiffs' property; and (viii) arrests

of Matthew, Parker and Sean ("Defendants' unlawful actions") was approximately four hours.

25.  Plaintiffs, under threat of physical violence up to and including being murdered,

were not free to leave the residence, stand or sit, or to move freely about the residence at any

time, without Defendants' permission, from the time of Defendants' explosive entry until

Defendants departed.

Brannen

26.  Defendants handcuffed Brannen within the residence for some four hours.

27. Defendants searched Brannen's person as well as the residence.

28. Upon Defendants' conclusion of their search and seizure of Brannen at the residence,

and while she was still in handcuffs, two Defendants transported Brannen to the Jesup Police

Department ("Department") for questioning.

29.  Brannen was locked up part of the time that she was held for questioning.

30.  Brannen was not free to leave the Department until two Defendants transported her

back to the residence at about three a.m. on August 8 or 9.

31.  At no time material herein did any Defendant inform Brannen of her right to remain

silent or her right to an attorney.

32.  While detaining Brannen at the Department against her will, none of the Defendants

questioned Brannen about any unlawful conduct.

33.  While detaining Brannen at the Department, Defendants questioned her about her

sexual orientation and her sexual history.

34.  Brannen was at all times material herein the owner of the residence.

35. Defendants ripped the front door of the residence off its hinges.

36. Defendants tore down the residence mailbox.

37. Defendants punched in a screen door of the residence.

38. Defendants found bags of Brannon's father's and grandmother's cremated remains, and, despite her pleas, cut them open, and dumped the ashes on the floor.

39. Despite her pleas, Defendants proceeded to destroy these remains as they tracked them throughout the residence.

40. Defendants had no arrest warrant for Brannen.

41. Brannen was not charged with any crime.

### Jason

42. Defendants handcuffed Jason in the laundry room on his knees for an extended period of time.

43. He was then taken to living room, where he remained handcuffed for several hours.

44. When Defendants made their explosive entry, they directed Jason to get down on the floor.

45. As Jason was getting down on the floor, a Defendant struck Jason on the head with his service weapon.

46. Defendants searched Jason's person.

47. Defendants had no arrest warrant for Jason.

48. Jason was not charged with any crime.

### Matthew

49. Matthew was in his room in the residence at the time of Defendants' explosive entry.

50.  Immediately subsequent to Defendants' explosive entry, Defendants broke down the door to Matthew's room and burst into his room.

51.  Defendants pointed their weapons at Matthew as they burst through his door.

52.  Defendants handcuffed Matthew and told him that they had a warrant for his arrest.

53.  Defendants searched Matthew's person.

54.  Defendants then brought Matthew to a police cruiser where Sean was already handcuffed.

55.  Defendants did not have an arrest warrant for Matthew.

56.  No arrest warrant for Matthew has since been produced.

57.  Defendants, with Matthew still in handcuffs, transported him and Sean to the Wayne County Jail. ("Jail").

58.  Matthew was subjected to a body cavity strip search at the Jail.

59.  Matthew remained incarcerated at the jail for some four weeks.

60. It is Matthew's understanding that any charges against him had been voluntarily dismissed prior to his release from Jail.

### Parker

61.  Defendants handcuffed Parker in the living room for several hours.

62. Defendants forced Parker to get on his hands and knees for a period of time, even though he informed them that he has a bad back including herniated disks.

63.  Defendants seized a substantial amount of Parker's personal property.

64. None of Parker's personal property that Defendants seized was stolen or used in the commission of a crime and there was no reason for Defendants to seize that property.

65. Defendants have not returned all of Parker's unlawfully seized personal property to him.

66. Defendants searched Parker's person.

67. Upon the conclusion of their search and seizure operation at the residence, Defendants transported Parker to the Jail.

68. Parker was subjected to a body cavity strip search at the Jail.

69. Parker remained incarcerated at the Jail for some five weeks, at which time he was released from custody.

70. At about 4 a.m. on the morning after Parker was incarcerated, Wright removed him from the Jail and interrogated him in the Department parking lot.

71. When Wright interrogated him, Parker asked to have his attorney present.

72. Wright ignored Parker's request and continued to interrogate him.

73. Parker has never been shown a charge against him.

74. Parker was never prosecuted.

75. It is Parker's understanding that any charges against him had been voluntarily dismissed prior to his release from Jail.

Sean

76. Sean resided in a separate dwelling (his camper) located on the residence, where Defendants conducted an explosive entry, search and seizure operation.

77. Defendants, immediately subsequent to their explosive entry, handcuffed Sean arrested him, took him to a patrol vehicle, and transported him to the Jail with Matthew.

78. Defendants arrested Sean for his possession of a cap gun pistol, which clearly was not a firearm.

79. Defendants seized Sean's cap gun, memory cards containing family photos, and some $1,000 in cash.

80. Sean believes he was charged with possession of controlled substances, although there were no such items found in his trailer or on his person.

81. Sean was subjected to a body cavity strip search at the jail.

82. Sean remained incarcerated for four days and was ultimately released on bond.

83. Defendants allowed Sean, who is diabetic, to take his insulin to Jail with him.

84. For the four days that he was in Jail, Sean was denied access to this medication.

85. Sean was required to take his insulin three times per day.

86. Sean feared death or serious injury from insulin deprivation.

87. Sean has never been shown a charge against him.

88. Sean was never prosecuted.

Andrew Worsham

89. Worsham was visiting the residence.

90. Worsham was standing just inside Parker's bedroom doorway, speaking with Parker who was at his desk, when several Defendants burst through the carport door and front door and began shouting at them.

91. Worsham turned to leave the room and was confronted by three firearms in his face, at which point two Defendants grabbed him by his shoulders and pushed him down to the floor screaming, "Get down. Don't move."

92. Worsham was attempting to comply when one of the Defendants jerked both of his arms behind his back and aggressively applied painfully tight handcuffs to his wrists.

93.  After a few minutes Worsham was pulled by his armpits to the living room and directed to kneel and face the center of the room with the others.

94.  A Defendant placed himself some two feet in front of Worsham and began watching him intently.

95.  From where he was being forced to kneel, Worsham could see some ten Defendants going into and out of every room of the house, could hear drawers being flung open, and furniture being overturned onto the floor.

96.  Worsham asked the Defendant in front of him if he could take his cell phone out of his back pocket and sit down on the floor as he has bad knees, and in fact was in need of knee replacement surgery in both knees.

97.  The defendant refused his request.

98.  He remained kneeling for several hours with his hands cuffed behind his back.

99.  Worsham saw Defendants carry some 600 or more items out of the residence.

100.  At no time was a warrant produced.

101.  Any inquiries that Worsham or other Plaintiffs made were ignored.

102.  After an extended period of time, Worsham was stood up, led into the kitchen where he was held for another period of time until he was eventually directed to leave the residence.

<u>The Aftermath</u>

103.  Wright produced an invalid search warrant in support of Defendants' unlawful actions on August 7 or 8. ("Wright's warrant").

104.  Wright's warrant is invalid because, *inter alia* (i) the "Search Warrant #" space remains blank; (ii) no warrant was shown to any Plaintiff, despite their repeated requests to be

shown one; (iii) although Wright's warrant is entirely dependent upon there having been a confidential informant, there was no confidential informant; (iv) no Plaintiff had engaged in any unlawful activity prior to the August 7 or 8 raid of the residence, from which it follows that there was nothing for a confidential informant to confide; (v) no Plaintiff ever had any contact with any person who could have truthfully supplied Wright with the information upon which Wright's warrant purportedly rests; (vi) Wright, who signed the affidavit in support of warrant, is not worthy of belief, as he has been involved in heinous crimes committed before and after August 7 or 8 involving a LaRoche family member; (vii) Wright had been surveilling the residence and several of the Plaintiffs for weeks prior to August 7 and 8, and had no need for a confidential informant if in fact any crimes were being committed in or around the residence; (viii) the return of service form remains blank; (ix) no copy of Wright's warrant was left with any Plaintiff or within the residence; (xii) no copy of a return of service was left with any Plaintiff or within the residence; and (xiii) Wright's warrant does not identify the magistrate who purportedly signed the warrant, as the signature is illegible and there is no name appearing beneath the signature.

105.  None of the Defendants brought Matthew, Parker, or Sean before a judge within 48 hours of their having been arrested for a probable cause hearing, bond hearing, or other form of determination ("probable cause determination"), or at any time during their respective periods of incarceration, despite Defendants lacking a facially valid court order, arrest warrant, or search warrant.

106.  There were no emergency or extraordinary circumstances justifying Defendants' failure to bring Matthew, Parker, and/or Sean before a judge for a probable cause determination.

107.  Defendants knew or should have known that the Wayne County Sheriff ("Sheriff") had a policy or practice of over-detention of prisoners, which included failing to bring prisoners

arrested without an arrest warrant, search warrant, or court order before a judge for a probable cause determination within 48 hours.

108. The Sheriff did not bring Matthew, Parker, or Sean before a judge for a probable cause hearing within 48 hours, or at any time during their respective periods of incarceration.

109. Matthew remained incarcerated in the Wayne County Jail for some four weeks, Parker for some five weeks, and Sean for approximately one week, all without having been brought before a judge for a probable cause determination.

110. At the end of such periods, Matthew, Parker and Sean were released from the Sheriff's custody, and no arrest or charge or attempt to prosecute any of them has subsequently been made.

111. There were no emergency or extraordinary circumstances justifying the Sheriff's failure to bring Matthew, Parker, and Sean before a judge within 48 hours for a probable cause hearing.

112. Defendant Lane bears supervisory responsibility for Defendants actions, as he had actual knowledge of them.

113. Defendant Lane's failure to supervise Defendants establishes the City's liability for Defendants' actions.

### Count 1 Under The U.S. Constitution And 42 U.S.C. §§ 1983 and 1988

114. Defendants' entrustment of Matthew, Parker and Sean to the custody of the Sheriff in the foregoing circumstances violated their rights under the United States Constitution and 42 U.S.C. § 1983.

115. None of the Defendants, at any time material herein, had in their possession any valid arrest warrant or search warrant issued by any judge, court, or magistrate authorizing any

of their actions, and in fact no valid arrest warrant or search warrant had been issued by any judge, court or magistrate permitting Defendants' actions.

116. Each of the Defendants, individually and in concert with the others, acted under pretense and color of law and their official capacity, but such acts were beyond the scope of their jurisdiction and without authorization of law. Each Defendant, individually and in concert with the others, acted willfully and knowingly, and caused Plaintiffs to be deprived of (i) their individual rights to freedom from unlawful searches and seizures of their persons, papers, and effects; and (ii) their individual rights to freedom from unlawful entry, search, physical abuse, terroristic threats, arrest, detention, over-detention, seizure and imprisonment, all of which rights are secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States, and by 42 U.S.C. § 1983.

117. Defendants deprived Brannen and Parker of their Fifth Amendment rights to an attorney and appropriate warnings when interrogated arising under the United States Constitution and 42 U.S.C. § 1983.

118. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to a reasonable allowance for attorney fees as a part of their costs.

## Count 2 Under O.C.G.A. §§ 51-1-13 and 51-1-14

119. Plaintiffs repeat and re-allege all prior allegations.

120. By their actions as alleged herein, Defendants committed the Georgia torts of assault and battery upon all Plaintiffs.

121. Each Defendant, individually and in concert with the others, acted willfully and knowingly in the commission of the torts of assault and battery upon all Plaintiffs.

122. Because the torts of assault and battery are intentional torts, Plaintiffs are entitled to

12

a reasonable allowance for attorney fees as part of their costs.

### Count 3 Under O.C.G.A. § 51-7-20

123.  Plaintiffs repeat and re-allege all prior allegations.

124.  By their actions as alleged herein, Defendants, individually and in concert with the others, acted willfully and knowingly in the commission of the Georgia torts of false imprisonment and false arrest against all Plaintiffs.

125.  Because false imprisonment and false arrest are intentional torts, Plaintiffs are entitled to a reasonable allowance for attorney fees as part of their costs.

WHEREFORE, Plaintiffs request (a) a trial by jury; and (b) judgment against Defendants as follows:

1. Compensatory damages against each and every Defendant in an amount to be proven at trial;

2.  General damages against each and every Defendant in an amount to be proven at trial;

3.  Special damages against each and every Defendant in an amount to be proven at trial;

4. Punitive damages against each and every Defendant in an amount to be proven at trial;

5. Reasonable attorney fees under both federal and state law;

6. Costs of suit; and

7. Such other and further relief as the court deems just and proper.

Dated:  July 8, 2022

E. MICHAEL RUBERTI, ESQ., LLC

*/s/ E. Michael Ruberti*
E. Michael Ruberti, Esq.
Georgia Bar No.:  618343
Post Office Box 20649
St. Simons Island, Georgia  31522
Phone:  (912) 634-2130
Fax:  (912) 634-3783

Email:  emr@rubertilaw.com